GReen, J.
delivered the opinion of the court.
This is an action of trespass against a constable for selling the only farm horse belonging to the plaintiff.
The principal question is whether the plaintiff below was the “head of a family” at the time the horse was seized and sold.
The evidence is that about sixteen years ago, the husband of the plaintiff dying, she went to live with her father and mother who were very old. Her father was between eighty and ninety years of age — owned the house and land, and by his permission the plaintiff and her children lived in the house with him, and she caused such portion of the land to be cultivated by her sons, as she chose. The court charged the jury that “if the plaintiff had children who were living with her at the time the levy was made, although she resided in the same house with her father, and although he might claim and exercise absolute dominion and control over the house and farm, still the plaintiff being the mother of children residing with her, would, within the meaning of the statute, be considered as the head of her own family, and within the . exemption of the statute; and that *216 there might be two families residing together in the same house and occupying the same apartments.”
To this charge the defendant in error excepts, and insists that a family consists of all those who live in the same house, and have one head or manager.
We do not question but that the definition given is correct when applied to the word “family” in its more general and comprehensive sense. When one man controls, supervises, and manages the affairs about a house, he is in the largest sense, the head of the family, and all who reside in the house are members of the family. But it may be a large boarding establishment, in which half a dozen distinct families reside. We do not suppose that these families lose their character as such, because they reside under another man’s roof,- and feed at a common table. So two families with equal rights and claims may reside together, and although thus associated, they all constitute in a large sense, one family — still the father, or mother, as the case may be, exercising a distinct control over the children and servants belonging to them — constitutes each a distinct family, and the manager of each a “head of a family.”
The act of 1833, ch. 80, that provides for the exemption of a farm horse and other articles from execution, in favor of the head of a family engaged in agriculture, ought to be so construed as to advance the remedy the legislature intended to afford. There is no reason that a family engaged in agriculture, merely because it may reside under the same roof with other families, and feed at a common table, should be denied the benefits of the act.
The case of Bowne vs. Wilt, 19 Wend. 475, is not analogous to the case before us. In that case it was decided that a man thirty-five or forty years old, residing with his step mother, and having no wife or children, was not a “householder” within the meaning of the statute of New York, that exempts the wearing apparel of a householder from execution. He had no family, had no control of the house, and consequently could not be a “householder.” But here, the plaintiff below was the mother of children living with her, dependent on her for protection and support, and subject to her control. They constituted, there *217 fore, her “family” peculiarly, as contradistinguished from that of her father, and she was the head thereof.
2. The act of assembly, before referred to, provides that the exemption shall extend only to executions issued upon judgments founded upon contracts entered into from and after the first day of February, 1834. In this case the judgment was founded upon an account, a few of the articles mentioned in which, were delivered in 1833, and the larger portion in 1835. We think the court properly charged the jury that this was such a case as would exempt the property mentioned in the statute.
The plaintiff in the execution had his right of action for the articles delivered in 1833, and if he had chosen might have brought his suit at the end of that year, for the recovery of their value. But he chose to let the account run on unliqui-dated and to sue for the whole in this action. He cannot, by his voluntary act, thus deprive the party against whom the execution issued of a right secured by law. The defendant could not, by any form of pleading known to the law, have caused the proceeding to be reversed, so that one judgment should be rendered for the sum due in 1833, and the other for the articles obtained after the 1st of February, 1834. We are therefore of opinion that there is no error in the record before us, and order that the judgment be affirmed.